## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ROBERTA GONZALES,**

            **Plaintiff,**

      **vs.**                                          **Civ. No. 14-835  KK**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

            **Defendant.**

### MEMORANDUM OPINION AND ORDER[1]

   **THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"), filed on May 15, 2015.  (Doc. 16.)  The Commissioner of Social Security ("Commissioner") filed a Response on August 10, 2015 (Doc. 20), and Plaintiff filed a Reply on August 27, 2015.  (Doc. 21.)  Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds the Motion is well taken and is **GRANTED.**

### I.  Standard of Review

   Judicial review in a Social Security appeal is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether substantial evidence supports the Commissioner's final decision[2]; and second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).   If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to Magistrate Judge Kirtan Khalsa to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 6, 8, 9.)

[2]  A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which is generally the ALJ's decision.  20 C.F.R. §§ 404.981, 416.1481.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously examine the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner's] findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. Fed. Aviation Admin.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.  Applicable Law and Sequential Evaluation Process

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any

other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). To qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or to last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §423(d)(1)(A); *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

When considering a disability application, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show that: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan* 399 F.3d at 1261. If the claimant cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

Although the claimant bears the burden of proving disability in a Social Security case, because such proceedings are nonadversarial, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). "This is true

---

[3] 20 C.F.R. pt. 404, subpt. P. app. 1.

despite the presence of counsel." *Henrie*, 13 F.3d at 361.  "The duty is one of inquiry and factual development," *id.*, "to fully and fairly develop the record as to material issues." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).  This may include, for example, an obligation to obtain pertinent medical records or to order a consultative examination.  *Madrid*, 447 F.3d at 791-92.  The duty is triggered by "some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation." *Hawkins*, 113 F.3d at 1167.

### III. <u>Background and Procedural Record</u>

Plaintiff  Roberta Gonzales ("Ms. Gonzales") was born on April 7, 1968.  (Tr. 196, 231.[4]) Ms. Gonzales completed the twelfth grade in 1986.  (Tr. 236.)  Ms. Gonzales' work history included document specialist, maintenance, meat packer, and sanitation.  (Tr. 236.)

On December 15, 2010, Ms. Gonzales protectively filed[5] an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382(a)(3).[6] (Tr. 196-201.)  Ms. Gonzales alleged a disability because of back, head and rib injuries; seizures; depression; migraines; chronic pain; and numbness in her hands.  (Tr. 235.)   Ms. Gonzales has not engaged in substantial gainful activity since her application date.[7]  (Tr. 22.)

---

[4] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 13) that was lodged with the Court on February 20, 2015.

[5] Protective Filing Status is achieved once an individual contacts the Social Security Administration with the positive stated intent of filing for Social Security Disability benefits.  The initial contact date is considered a claimant's application date, even if it is earlier than the date on which the Social Security Administration actually receives the completed and signed application. *See* 20 C.F.R. §§ 404.614, 404.630, 416.325, 416.340, 416.345.

[6] On December 15, 2010, Ms. Gonzales also filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401.  (Tr. 68-69.)  However, on December 21, 2010, the Social Security Administration notified Ms. Gonzales that she did not have enough work credits to qualify for disability benefits.  (Tr. 65-67.)

[7] Ms. Gonzales stated an alleged onset date of April 15, 2007.  (Tr. 196, 231.)  However, "[u]nder Title XVI, there is no retroactivity of payment.  Supplemental security income (SSI) payments are prorated for the first month for

Ms. Gonzales' application was initially denied on March 21, 2011.  (Tr. 73, 74-94, 95-98.)  On May 24, 2011, Ms. Gonzales submitted an appeal,[8] and requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 106-07, 268-72.)  The ALJ conducted a hearing on October 22, 2012. (Tr. 36-63.)  Ms. Gonzales appeared in person at the hearing with her attorney Roseann Murray.[9]  (Id.)  The ALJ took testimony from Ms. Gonzales (Tr. 43-57), medical expert Robert Pelc, Ph.D. (Tr. 38-43, and an impartial vocational expert ("VE"), William Tisdale. (Tr. 57-62.)

On November 8, 2012, the ALJ issued an unfavorable decision.  (Tr. 16-30.)  At step one, he found that Ms. Gonzales had not engaged in substantial gainful activity since her application date.  (Tr. 22.)  The ALJ therefore proceeded to step two and found that Ms. Gonzales suffered from the following severe impairments:  "arthritic changes involving the cervical and lumbar spine, migraine headaches, mood disorder not otherwise specified versus depression not otherwise specific, a rule-out of borderline intellectual functioning, and history of alcohol abuse."  (Id.)  At step three, the ALJ concluded that Ms. Gonzales did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24-25.)

Because he found that Ms. Gonzales' impairments did not meet a Listing, the ALJ went on to assess Ms. Gonzales' RFC, which is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 416 920(a)(4), 416.920 (e, f, g).  The ALJ stated that

> [a]fter careful consideration of the entire record, the undersigned finds that the
> claimant has the residual functional capacity to perform light work as defined in

which eligibility is established after application and after a period of ineligibility."  SSR 83-20, 1983 WL 31249, at *1.

[8] The Transcript of the Administrative Record does not contain evidence of a decision on Ms. Gonzales' appeal.

[9] Ms. Gonzales is represented in this proceeding by Attorney Michael Armstrong.  (Doc. 1, Tr. 7-8.)

> 20 CFR 416.967(b) except stand and/or walk (with normal breaks) for a total of about 4 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, occasionally climb ramps and stairs but should not be required to climb ladders, ropes or scaffolds, occasionally balance, stoop, kneel, crouch and crawl, occasionally overhead reaching with the left upper extremity, should avoid even moderate exposure to hazards (machinery, heights, etc.), and is limited to simple and repetitive work, with occasional to frequent contact with supervisors, co-workers, and the public.

(Tr. 24.)  At step four, the ALJ concluded that Ms. Gonzales was able to perform her past relevant work as a document specialist as generally performed in the national economy.  (Tr. 29.) At step five, the ALJ made alternative findings.  (Tr. 29-30.)  The ALJ modified his RFC assessment to assume that Ms. Gonzales could perform only sedentary work, and included an additional sit/stand limitation.  (*Id*.)  The ALJ then applied the Medical-Vocational Guidelines as a framework and sought testimony from the VE.  (*Id*.)  Based on Ms. Gonzales' age, education, work experience, and modified residual functional capacity, the ALJ determined that Ms. Gonzales was capable of other work that exists in significant numbers in the national economy, and that she was not disabled.  (*Id.*)

On February 28, 2014, the Appeals Council issued its decision denying Ms. Gonzales' request for review and upholding the ALJ's final decision. (Tr. 9-12.)  On September 12, 2014, Ms. Gonzales timely filed the instant action seeking judicial review of the Commissioner's final decision.[10]  (Doc. 1.)

### IV.  Analysis

Ms. Gonzales asserts two arguments in support of reversing and remanding her case, as follows: (1) the ALJ's past work finding at step four constitutes legal error and is not supported by substantial evidence because (i) Ms. Gonzales' past work as a document specialist was not

---

[10] On July 30, 2014, Attorney Michael Armstrong submitted a Request for Extension of Time To File Appeal. (Tr. 4.)  On August 14, 2014, the Social Security Administration granted Ms. Gonzales leave until September 18, 2014, to file a civil action.  (Tr. 1-2.)

substantial gainful activity and, even if it were, (ii) the ALJ failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding her walking/standing limitation; and (2) the ALJ's alternative finding at step five constitutes legal error and is not supported by substantial evidence because the ALJ failed to resolve the conflict between the VE's testimony and the DOT regarding (i) her need to alternate between sitting and standing limitation and (ii) her limitation to simple and repetitive work.  (Doc. 16 at 12-21.) Ms. Gonzales' motion will be granted and the case will be remanded to the Commissioner for the reasons discussed below.

### A.    The ALJ's Step Four Findings

Ms. Gonzales argues the ALJ erred at step four and that his findings are not supported by substantial evidence.  (Doc. 16 at 12-14.)  Specifically, Ms. Gonzales asserts that her past work as a document specialist does not qualify as past relevant work because her earnings as a document specialist, when averaged, do not rise to the level of substantial gainful activity.  (*Id.*) Ms. Gonzales further asserts that even if it did qualify, the ALJ failed to resolve the conflict between the VE's testimony, that Ms. Gonzales could perform the job of "photocopy machine operator," with the DOT's exertional classification of the job.  (*Id.* at 14-17.)

The Commissioner contends that the ALJ considered Ms. Gonzales' past work and correctly concluded she could still perform the position of document specialist.  (Doc. 20 at 7-10.)  In support, the Commissioner asserts that Ms. Gonzales identified on her Work History Form three different employers in the past fifteen years for whom she worked full time as a document specialist, and also testified she worked full time as a document specialist.[11]  (Doc. 20

---

[11] On January 25, 2011, Ms. Gonzales completed a Work History Form.  (Doc. 242-253.)  Ms. Gonzales identified nine jobs in the past fifteen years on this form.  (*Id.*)  For all nine jobs, Ms. Gonzales indicated she worked eight hours per day, 40 hours per week.  (*Id.*)  Ms. Gonzales did not provide dates of employment for any of the jobs she

at 8.)  The Commissioner further asserts that even if Ms. Gonzales "held those jobs for less than 12 month[s], but earned at the substantial gainful activity level when she performed them," that it would qualify as substantial gainful activity.  (*Id.*)  The Commissioner also contends that Ms. Gonzales would have been on the job long enough to learn how to perform it. (*Id.* at 9.)  As to Ms. Gonzales' argument regarding the conflict between the VE's testimony and the DOT, the Commissioner asserts that the ALJ fulfilled his obligation to ask about any conflict and that there was no apparent conflict to resolve.  (*Id.* at 10.)

### 1.   Ms. Gonzales' Past Work as a Document Specialist Was Not Substantial Gainful Activity

At step four, an ALJ considers his RFC assessment and claimant's past relevant work. 20 C.F.R.  416.920(a)(4)(iv).   If a claimant can still do their past relevant work, they are determined to be not disabled.  *Id.*  In determining whether a claimant's past work experience qualifies as past relevant work, the ALJ must consider whether the work (1) was performed within the last fifteen years, (2) was substantial gainful activity, *and* (3) lasted long enough for the claimant to learn to do it.   20 C.F.R. § 416.960(b)(1).   The issue here is whether Ms. Gonzales' past work as a document specialist was substantial gainful activity.

Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 416.972(a).  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. § 416.972(b).  Substantial gainful activity requires the ability to perform work on a sustained basis. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) (a finding that claimant is able to do substantial gainful activity requires more than a simple determination that the claimant can find employment and that she can physically perform certain jobs; it also requires a determination that the claimant can hold whatever jobs she finds for a significant

listed.  (*Id.*)  On October 22, 2012, Ms. Gonzales testified that when she was a document specialist, it was full time. (Tr. 58.)

period of time).   Work which is done on a sporadic or irregular basis is not likely to be substantial gainful activity.   *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979) (substantial gainful activity means the performance of a substantial service with reasonable regularity).

The primary consideration in evaluating a claimant's work activity for substantial gainful activity purposes will be the earnings a claimant derived from the work activity.   20 C.F.R. § 416.974(a)(1); SSR 83-33, 1983 WL 31255, at *2.   Generally, a claimant's earnings for the actual period of time in which work was performed are totaled, averaged, and then compared with the SGA Earnings Guidelines.   20 C.F.R. § 416.974(b)(1); SSR 83-35, WL 31257, at *1; *see* POMS DI 10501.015[12] (Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity (referred to herein as "SGA Earnings Guidelines")).   A claimant's average monthly earnings that are equal to or less than the amounts determined by the SGA Earnings Guidelines will generally show that a claimant has not engaged in substantial gainful activity.   20 C.F.R. § 416.974(b)(3)(i).   If a claimant has not worked for a full year at a job, it is generally not appropriate to apply the yearly SGA Earnings Guidelines to her earnings.   SSR 83-35, 1983 WL 31257, at *4; POMS DI 10505.015 (Average Countable Earnings).   When a person has been employed for a short time, the case should be evaluated based on a claimant's expected work pattern and earnings.   *Id.*   If there is a significant change in work patterns or earnings, earnings should not be averaged over the entire period of work involved, but must be averaged over each separate period of work.   *Id.*   The evaluation of earnings is ultimately the responsibility of the adjudicator.   POMS DI 10505.015.

---

[12] The POMS is "a set of policies issued by the Administration to be used in processing claims."   *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999).

The ALJ failed to apply the correct legal standards in determining whether Ms. Gonzales' past work as a document specialist was substantial gainful activity. The record supports that Ms. Gonzales earned income as a document specialist in 1998, 1999 and 2000.[13] (Tr. 202-206.) However, her verified earnings - those reported by her employers - reflect she was employed as a document specialist for only short periods of time during each of those years.[14] For this reason, it is not appropriate to apply the yearly SGA Earnings Guidelines to determine substantial gainful activity, as Ms. Gonzales argues. (Doc. 16 at 14-15); SSR 83-35, 1983 WL 31257, at *4; POMS DI 10505.015. Instead, Ms. Gonzales' earnings should be evaluated based on her expected work pattern and earnings. SSR 83-35, 1983 WL 31257, at *4; POMS DI 10505.015.

The Commissioner concedes that Ms. Gonzales' earnings reflect only short periods of work as a document specialist during the years at issue. (Doc. 20 at 8.) However, the Commissioner nonetheless argues that "the logical conclusion given her representations" is that when Ms. Gonzales worked as a document specialist, it was *full time*. (*Id*.) The Commissioner then calculates that based on Ms. Gonzales' self-reported pay rates, her full-time earnings, even for a short period of time, would amount to substantial gainful activity.[15] (*Id*.) While the Commissioner's approach for averaging earnings under these circumstances is compatible with

---

[13] In the "Detail Covered FICA Earnings and Employer Name and Address for Years Requested," Ms. Gonzales' employers reported that in 1998, she earned $420.88 as a document specialist for IKON Office Solutions; in 1999, she earned $2,590.46 as a document specialist for IKON Office Solutions, and $1,792.25 as a document specialist for Xact Xcellence, Inc. (Xact Duplicating); and in 2000, she earned $1,107.61 as a document specialist for Xact Xcellence, Inc. (Xact Duplicating). (Tr. 202-204.)

[14] *See* fn. 13, *supra*. Additionally, Ms. Gonzales reported that she earned $7.50/hr. for IKON and $11.00/hr. for Xact Duplicating. (Tr. 243-44.) Dividing her employer reported earnings by her hourly rate, Ms. Gonzales worked approximately 56 hours, or one and a half weeks, as a document specialist in 1998; 508 hours, or twelve and a half weeks, as a document specialist in 1999; and 100 hours, or two and a half weeks, as a document specialist in 2000. All told, over the course of *three years*, Ms. Gonzales worked sixteen and a half weeks as a document specialist.

[15] *See* fn. 14, *supra*. Based on Ms. Gonzales' self-reported pay rate at IKON (Tr. 244), her full-time monthly earnings would have been $1,300 ($7.50 x 40/hr. week = $300 x 52 weeks = $15,600 ÷ 12 = $1,300). Based on Ms. Gonzales' self-reported pay rate at Xact Duplicating (Tr. 243), her full-time monthly earnings would have been $1,906.67 ($11.00 x 40/hr. week = $440 x 52 weeks = $22,880 ÷ 12 = $1,906.67).

the applicable Social Security Ruling, *see* SSR 83-35, 1983 WL 31257, at *4, the Commissioner's argument fails because the record is silent regarding the specific dates that Ms. Gonzales worked as a document specialist in 1998, 1999 or 2000.  As such, there is no way of knowing, absent developing the record, whether Ms. Gonzales worked as a document specialist in any of those years on a full-time, part-time, or sporadic basis.  Further, even if Ms. Gonzales had worked *full time* for any of the short periods of time she worked as a document specialist, the ALJ still had a responsibility to determine whether she could hold that job for a significant period of time in light of her work patterns and earnings.  *Washington*, 37 F.3d at 1442. Here, Ms. Gonzales' sporadic and irregular work history makes this finding unlikely.[16]  *Markham,* 601 F.2d at 534.  That aside, the Commissioner's argument is not apparent from the ALJ's findings.  Thus, even if it had merit, the Court will not adopt the Commissioner's post-hoc rationalization for the ALJ's lack of findings that are not apparent from the ALJ's decision itself.  *Watkins*, 350 F.3d at 1301; *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (finding the court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision).

Here, given Ms. Gonzales' short work periods and limited earnings as a document specialist, the ALJ had a responsibility to evaluate whether Ms. Gonzales' past work as a document specialist was substantial gainful activity based on her expected work pattern and earnings.  The ALJ did not do so.  Instead, he appeared to have relied solely on Ms. Gonzales' Work History Form and testimony that she worked full time as a document specialist.  (Tr. 58-

---

[16] Ms. Gonzales had four different employers and jobs in 1998 and earned a total of $2,345.44; she had three different employers and two different jobs in 1999 and earned a total of $4,501.66; and she had five different employers and five different jobs in 2000 and earned a total of $4,269.83.  (Tr. 202-206.)  During the entire fifteen years preceding the adjudication of Ms. Gonzales' claim, she had twenty-four (24) different employers for whom she did a variety of jobs.  (*Id.*)  Her earnings over this period of time were so sporadic and inconsistent that the Social Security Administration determined she was ineligible for disability benefits because she did not have enough work credits.  (Tr. 65-67.)

59.)  Had the ALJ thoroughly reviewed the record, he would have uncovered that Ms. Gonzales' reported work history and testimony failed to align with her actual earnings and, as such, his evaluation required more, including developing the record.[17]  *Hawkins*, 113 F.3d at 1167 (an ALJ has a duty to fully and fairly develop the record as to material issues).

For these reasons, the ALJ failed to apply the correct legal standards in determining whether Ms. Gonzales' past work as a document specialist was substantial gainful activity, and his finding that Ms. Gonzales could perform past relevant work as a document specialist is, therefore, not based on substantial evidence.  This is reversible error.

### 2. The ALJ Failed to Resolve the Conflict Between the VE Testimony and the DOT Regarding Ms. Gonzales' Standing/Walking Limitation

Although the Court has found that Ms. Gonzales' past work as a document specialist does not qualify as past relevant work, even if it did, the ALJ's step four findings are not based on substantial evidence because the ALJ failed to ask the VE whether his testimony was consistent with the DOT.   Ms. Gonzales argues that the ALJ has an affirmative duty to investigate and elicit a reasonable explanation for conflicts between the VE's testimony and the DOT before he can rely on the VE's testimony as substantial evidence.  (Doc. 16 at 14-17.)  Ms. Gonzales contends there was a conflict here, because the ALJ's hypothetical at step four, which limited her to four hours of standing and/or walking, reduced her ability to do a full range of light work. (*Id.*)  The VE testified, however, that Ms. Gonzales could do her past work as a document specialist – a job that, pursuant to the DOT, required a full range of light exertional demands. Ms. Gonzales contends that the VE's testimony placed the ALJ's finding with respect to Ms. Gonzales' RFC in conflict with the exertional classification of a document specialist as

---

[17] Compare Work History Form (Tr. 243-53) and Testimony (Tr. 58) with Detail Covered FICA Earnings and Employer Name and Address for Years Requested (Tr. 202-206).

described in the DOT.  (*Id.*)  The Commissioner argues the ALJ fulfilled his responsibility to ask about any conflict between the VE's testimony and the DOT, and that the inclusion of additional limitations in a hypothetical question reducing the full range of light work does not create a conflict.  (Doc. 20 at 10.)  The Commissioner contends the ALJ's step four findings should be upheld.  (*Id.*)  The Court does not agree.

The Tenth Circuit has held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ *must* ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point."  *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (emphasis added).  *Haddock* further explains that "reasonable explanation[s]" would include the job the VE testifies about not being included in the DOT, as the Dictionary is self-avowedly not comprehensive; or that there is a specified percentage of a given job performed at a different or lower RFC, as the DOT describes maximum job requirements; or the VE may have knowledge of how the job is performed in a particular setting.  196 F.3d at 1091-92; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (describing reasonable explanations for conflicts in occupational information).  Although an ALJ may not "unreservedly accept" a VE's testimony when it contradicts the DOT, a reasonable explanation includes the VE testifying from his or her professional experience.  *Id.* at 1091; *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009).

After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling 00-4p and further clarified the ALJ's affirmative responsibility to ask about conflicts as follows:

The Responsibility to Ask About Conflicts

When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and

> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

Explaining the Resolution

When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.  Thus, when an ALJ chooses to elicit VE testimony at steps 4 and 5, the ALJ's responsibility is threefold.  First, he has an affirmative responsibility to ask about any possible conflicts between the VE evidence and the information provided in the DOT.  Second, if there is an apparent unresolved conflict, the ALJ must elicit a reasonable explanation.  Third, the ALJ must explain in his determination how he resolved the conflict.

The ALJ did not satisfy his responsibility at step four to ask about, resolve, and explain any possible conflict between the VE's testimony and the information provided in the DOT. Here, the ALJ questioned the VE at step as follows:

> [ALJ]: Are you familiar with the survey of businesses that exist in the national economy?

> [VE]:  Yes, I am.

> [ALJ]:  Are you familiar with The Dictionary of Occupational Titles?

> [VE]:  Yes.

14

[ALJ]:  Did you review the vocational exhibits?

[VE]:  Yes, I did.

(Tr. 58.)

[ALJ]:  Okay.  Mr. Tisdale, I want you to assume you have a younger individual with a twelfth grade education, with the work history of a document specialist  and a cleaner, who is limited to simple and repetitive work, who can interact in social domains of, with the public, co-workers, and supervisors on an occasional to frequent basis using the social security definitions.

According to the government, can occasionally lift 20 pounds, frequently 10; stand or walk four hours; sit six.  Push and pull is unlimited except the 10, 20.  Twenty, 10 pound limitation.  Can occasional balance, stoop, kneel, and crouch and crawl.  Limited to lifting overhead to occasional lift for left hand.  Fingering, handling, and feeling are unlimited.  Can you identify any jobs that person could do?

[VE]:  Well I think with those limitations, Your Honor, the document specialist, which is essentially the photocopy machine operator.  That is unskilled. That's, in fact, on fairly low level, unskilled occupation range.  That would be within the limits you described.

[ALJ]:  That's the document specialist?

[VE]:  Yes.  Otherwise known as a photocopy machine operator.

[ALJ]:  There's people who just do that?

[VE]:  Yes.  That's what she did for a legal firm.

[ALJ]:  Okay.  If I use the same psychological limits but change the physical as follows, sit for half an hour, stand for 15 to 30 minutes, walk three blocks, lift 20 pounds, and has the same postural limitations, would your opinion change?

[VE]:  Yes.  I believe that that past work would not be available.

(Tr. 60-61.)  The ALJ's inquiry then proceeded to step five.  (*Id.*)

In his determination, the ALJ represented that "[t]he impartial vocational expert testified that based upon the claimant's residual functional capacity, the claimant could return to her past

relevant work as a document specialist as generally performed in the national economy," and that his testimony was "consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 29.) However, it is indisputable that the ALJ did not ask the VE during his step four inquiry if there were any possible conflicts between the VE's testimony and the information provided in the DOT, as he was required to do. It is also indisputable that the ALJ's hypothetical reduced Ms. Gonzales' ability to do a full range of light work because it limited her to four hours of standing or walking.[18] Finally, it is indisputable that the VE testified Ms. Gonzales could do her past work as a document specialist – a job that, pursuant to the DOT, required a full range of light exertional demands.[19] Because the ALJ failed to ask about, resolve, and explain the conflict between the VE's testimony and the information provided in the DOT, the ALJ may not rely on the VE's testimony as substantial evidence. *Haddock*, 196 F.3d at 1091.

Moreover, the Commissioner's argument that the ALJ fulfilled his obligation to ask about conflicts and that there was no apparent conflict is unpersuasive. First, the inquiry the Commissioner cites occurred at step five.[20] (Doc. 20 at 9-10, Tr. 62.) Second, the cases cited by the Commissioner to support his argument that "additional limitations in a hypothetical question reducing the full range of light work does not create a conflict between the VE and the DOT" are misplaced. (Doc. 20 at 10.) The Commissioner represents that the court in *Martinez v. Astrue*[21]

---

[18] "[A] job is in this [light] category when it requires a good deal of walking or standing[.] . . . [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *5-6.

[19] The DOT establishes that the exertional demand of a photocopy machine operator is light. *See* DOT Code: 207.685-014 – Photocopying-Machine Operator (clerical).

[20] At step five, the VE identified three sedentary jobs Ms. Gonzales could perform based on the ALJ's modified RFC. (Tr. 62.) The ALJ then asked the VE, "Have the job duties in these occupations changed from how they are described in the DOT?" (*Id.*; Tr. 62.) The VE responded "I think they are the same. I would say, no, they have not changed." (*Id.*)

[21] 316 F. App'x 819 (10th Cir. 2009).

found "no conflict between VE testimony and DOT when the hypothetical question for light work included additional limitations related to standing and walking and carrying a cane." (*Id.*) The Commissioner, however, oversimplified the court's findings.[22]  Further, the reason there was no conflict in *Martinez* is because the VE identified three *sedentary* jobs that accommodated the standing/walking restriction in the ALJ's hypothetical reducing the full range of light work.[23] That is not the case here.  Here, the ALJ's hypothetical reduced Ms. Gonzales' ability to do a full range of light work, yet the VE testified she could do a job that required a full range of light exertional demands.  (Tr. 60-61.)  Therefore, the facts in *Martinez* are distinguishable.  As for *Newburn v. Barnhart*,[24] the Commissioner represents that the ALJ correctly relied on light exertion jobs identified by the VE that accommodated standing for four hours or less.  (Doc. 20 at 10.)  However, in *Newburn*, the ALJ specifically questioned the VE whether the light exertional jobs identified could be performed with the standing/walking restriction.  *Newburn*, 62 F. App'x at 304.   The VE answered that "[t]hose jobs would accommodate the inability to stand more than four hours." *Id.*  The ALJ did not make such an inquiry here.

For the foregoing reasons, even if Ms. Gonzales' past work as a document specialist amounted to past relevant work, the ALJ failed to resolve the conflict between the VE testimony and the DOT regarding Ms. Gonzales' standing/walking restriction.   Therefore, the ALJ's

---

[22] The claimant alleged several errors at step five regarding the VE's credibility.  *Martinez*, 316 F. App'x at 824-26.  The Commissioner's representation fails to account for the focus of the court's findings that related to the VE's credibility, an alleged omission of a sitting restriction, and whether the use of a cane precluded all sedentary work.  *Id.*  Having resolved those issues, the court found that claimant failed to identify a conflict inherent in the VE's testimony.  *Id.*

[23] In *Martinez*, the claimant was limited to light work, but further restricted to standing for an hour and a half in an eight-hour day and walking for two and a half hours in an eight-hour day.  *Martinez*, 316 F. App'x at 825.  Thus, the claimant's standing/walking limitation amounted to four hours.  *Id.*  "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday[.]"  SSR 83-10, 1983 WL 31251, at *5.

[24] 62 F. App'x 300 (10th Cir. 2003).

findings at step four are not based on substantial evidence.  *Haddock*, 196 F.3d at 1091.  This is reversible error.

### B.     The ALJ's Step Five Findings

Even though the ALJ found that Ms. Gonzales could return to her past relevant work as a document specialist at step four, the ALJ chose to make alternative findings at step five based on a modified hypothetical as follows:[25]

> [ALJ]: Okay.  If I use the same psychological limits[26] but change the physical as follows, sit for half an hour, stand for 15 to 30 minutes, walk three blocks, lift 20 pounds, and has the same postural limitations,[27] would your opinion change?
>
> [VE]:  Yes.  I believe that that past work[28] would not be available.
>
> [ALJ]: And would you be able to identify any jobs that person could do?
>
> [VE]:  Well I think there would be sedentary work at the unskilled level that individual could perform.  I would say order clerk, DOT Code 209.567-014.  As I said, sedentary and unskilled, an SVP 2.  Nationally I'm showing about 15,000 of those positions existing, and in Colorado about 300 exist.
>
> Another example would be addressing clerk, DOT Code 209.587-010. Also sedentary and unskilled, an SVP 2.  Nationally I'm showing about 20,000 of those positions existing.  Colorado, about 350.  A third example would be a charge account clerk, DOT Code 205.367-01 [inaudible].  That is –
>
> [ALJ]: 01 what?

---

[25] The ALJ noted in his determination that "[a]lthough not necessary as not supported by the evidence of record, the undersigned had also asked the vocational expert to assume a sedentary residual functional capacity based upon the claimant's own reported limitations, and although the vocational expert testified the claimant would be unable to perform her past relevant work, the testified there were other jobs existing in the national economy that the claimant would be able to perform."  (Tr. 29.)

[26] The ALJ's RFC assessment limited Ms. Gonzales to "simple and repetitive work, who can interact in social domains of, with the public, co-workers, and supervisors on an occasional to frequent basis using the social security definitions."  (Tr. 60.)

[27] The ALJ's RFC assessment limited Ms. Gonzales to "occasional balance, stoop, kneel, and crouch and crawl. Limited to lifting overhead to occasional lift for left hand."  (Tr. 60.)

[28] Photocopy machine operator.  (Tr. 61.)

[VE]:   014.  That is sedentary exertionally and unskilled, an SVP 2.  Nationally I'm showing about 18,000 of those positions existing, and in the region I'm showing about 300.

[ALJ]: Have the job duties in these occupations changed from how they are described in the DOT?

[VE]:   I think they are the same.  I would say, no, they have not changed.

[ALJ]: How many unplanned absences would be tolerated in these jobs?

[VE]:   I think no more than one to two absences per month would be tolerated by employers.

[ALJ]: And what would happen if there were say three?

[VE]:   I believe be [sic] terminated.

[ALJ]: Thank you.

(Tr. 61-62.)  Based on this evidence, the ALJ determined that the VE's testimony was consistent with the DOT, and found that considering Ms. Gonzales' age, education, work experience, and modified RFC, she was capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (Tr. 30.)  As such, the ALJ found Ms. Gonzales not disabled.  (*Id.*)

Ms. Gonzales argues that the ALJ also failed at step five to inquire about conflicts between the VE's testimony and the DOT.  (Doc. 16 at 17-21.)  Specifically, Ms. Gonzales asserts that the sedentary jobs the VE identified were inconsistent with her need to alternate between sitting and standing.  (*Id.*)  She further asserts that two of the three sedentary jobs identified required a reasoning level of three which were inconsistent with her limitation to simple and repetitive work.  (*Id.*)  The Commissioner contends that "the overwhelming weight of authority" supports that a sit-stand option does not conflict with the DOT and, for that reason, there was no need for the ALJ to ask about it.  (Doc. 20 at 12.)  As to the second argument, the

Commissioner contends that even if two of the jobs identified were inconsistent with Ms. Gonzales' ability to do so simple and repetitive work, the VE identified at least one job with a reasoning level that was consistent with her ability.  (Id.)  As such, any error is harmless.  (*Id.*)  The Court does not agree.

1.   <u>**The ALJ Improperly Relied on the VE's Testimony Regarding
Ms. Gonzales' Sit-Stand Restriction**</u>

Ms. Gonzales' first argument at step five is that because the DOT does not address the sit-stand option, there was an apparent conflict between the VE's testimony and the DOT that the ALJ was required to address and resolve.  (Doc. 16 at 18-19; Doc. 21 at 5-6.)  Ms. Gonzales cites two cases from this district to support that the "existence of a sit-stand conflict has been recognized in this District."  (Doc. 21at 5.)  The Commissioner argues that the overwhelming weight of authority from other districts, as well as other district courts in the Tenth Circuit, supports that because the DOT does not address a sit-stand option there was no apparent conflict, and for that reason there was no conflict for the ALJ to address.  (Doc. 20 at 11-12.)  For the reasons discussed below, the Court finds the ALJ improperly relied on the VE's testimony.

The ALJ has an affirmative duty to question a vocational expert about the source of his opinion and any deviations from the DOT.   *Haddock*, 196 F.3d at 1091; SSR 00-4p, 2000 WL 1898704, at *4.  Further, the absence of a limitation in the DOT does not eliminate an ALJ's duty of inquiry, as borne out by the cases the parties cite.  The common issue addressed in the district court cases from this circuit cited by both the Commissioner and Ms. Gonzales was whether an ALJ could rely on a VE's testimony as substantial evidence regarding a limitation not specifically addressed in the DOT; *i.e.,* a sit-stand option.  *See Brummett v. Colvin*, 2015 WL 3777372, at *6 (D. Colo. June 16, 2015) (finding that by taking claimant's sitting and standing limitations into account, the VE's testimony was used to verify, clarify, and supplement DOT job

descriptions); *Anderson v. Colvin*, 2014 WL 1255318, at *9 (D. Utah Mar. 26, 2014) (finding

that a VE's testimony based on the sit/stand restriction provides "more specific information than

is contained in the DOT"); *Cowen v. Astrue*, 2010 WL 2925251, at *10-11 (D. Kan. July 21,

2010) (finding that a ALJ properly relied on the VE's testimony that jobs were consistent with

DOT in allowing a sit-stand option because it was based on his/her professional experience); *see*

*also Dutcher v. Colvin*, Civ. 13-854 WPL (D.N.M. Dec. 8, 2014) (finding that the VE noted

there was no sit-stand option in the DOT for the referenced jobs, but that the ALJ could rely on

VE testimony as substantial evidence because the VE explained the basis of testimony on

Department of Labor explanations); *Duran v. Colvin*, Civ. 12-739 SMV (D.N.M. Oct. 10, 2013)

(finding that the ALJ impermissibly relied on the VE's testimony because the ALJ's identifying

that the DOT does not address a sit/stand option, without more, is insufficient).   These cases

further bear out that the ALJ's reliance on VE testimony as substantial evidence was based on

specific testimony elicited in which the VE expressly addressed the sit-stand option and the

claimant's ability to perform the jobs identified.  *See Brummett*, 2015 WL 3777372, at *6 (noting

that the ALJ asked the VE if her testimony conflicted with the DOT and the VE responded that

although the sit-stand was not covered in the DOT, she had to look whether the jobs identified

allowed that); *Anderson*, 2014 WL 1255318, at *9 (noting that the VE testified that the DOT

does not provide a sit/stand option and the VE relied on his experience to adjust the numbers of

the jobs identified); *Cowen*, 2010 WL 2925251, at *11 (noting that the VE testified (with some

reduction in numbers) that the jobs identified could be performed with an option to change

positions from sitting to standing occasionally, and could be done either sitting or standing); *see*

*also Dutcher,* Civ. 13-854 WPL (D.N.M. Dec. 8, 2014) (finding that the VE testified there was

no sit/stand option in the DOT but that the claimant could do the jobs identified based on Department of Labor explanations).

Here, unlike the cases cited, the ALJ did not ask about or elicit VE testimony specific to the sit-stand option in his hypothetical.  As such, the ALJ improperly relied on the VE's testimony as substantial evidence.

### 2. The ALJ Failed To Resolve the Conflict Between the VE's Testimony and the DOT Regarding Ms. Gonzales' Limitation to Simple and Repetitive Work

Lastly, Ms. Gonzales argues that the ALJ failed to resolve the conflict between the VE's testimony and the DOT because the ALJ limited Ms. Gonzales to simple and repetitive work, yet two of the jobs the VE identified required a reasoning level of three.  (Doc. 16 at 20-21.) Ms. Gonzales cites *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), in which the Tenth Circuit held that level three reasoning jobs are inconsistent with a limitation to simple and routine tasks.  (*Id*.)  The Commissioner suggests that the reasoning development levels do not determine the specific mental or skill requirements of a job, but in any event argues that the VE identified at least one job that carries a reasoning level of two.  (Doc. 20 at 12.)  For that reason, the Commissioner asserts that the ALJ's failure to resolve this conflict is harmless error. (*Id*.)

Here, the ALJ failed to resolve the conflict between the VE's testimony that Ms. Gonzales could perform jobs that required level-three reasoning and her limitation to simple and repetitive work.  The DOT specifically addresses the reasoning level required for any particular job.  In this case, two of the jobs the VE identified required a reasoning level of three; *i.e.,* an order clerk[29] and charge account clerk[30] require a reasoning level of three.[31]  A reasoning

---

[29] *See* DOT Code 209.567-014 – Order Clerk, Food and Beverage (hotel & rest.).

[30] *See* DOT Code 205.367-014 – Charge-Account Clerk (clerical) alternate titles: credit-card interviewer; new-account.

level of three is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variable in or from standardized situations."  1991 WL 688702.    Like the court's finding in *Hackett*, this level of reasoning arguably exceeds the ALJ's hypothetical limiting Ms. Gonzales to simple and repetitive work, which the ALJ failed to address.  *Hackett*, 395 F.3d at 1176.

Further, based on its review of the record, the Court finds that the ALJ's failure to ask about this conflict extends to whether Ms. Gonzales could perform the level-two reasoning required by the third job the VE identified, *i.e.,* an addressing clerk.[32]  Here, the ALJ elicited testimony at the hearing from Dr. Robert E. Pelc[33] as follows:

> [ALJ]:  You've completed 5-F at my request, as you've noted, and the diagnoses appear clear, although you say there's a rule out of borderline intellectual functioning.  What is – what do you mean by that?
>
> [DR. PELC]:  . . .  That essentially means that there is some suggestion that there may be some limitations in that area that this diagnosis might be applicable, but that there is insufficient date to actually confirm such a diagnosis. . . .
>
>     . . .

---

[31] The DOT includes a General Education Development (GED) Scale which is composed of three components: (1) reasoning development; (2) mathematical development; and (3) language development.  1991 WL 688702 (Dictionary of Occupational Titles, Appendix C – Components of the Definition Trailer).  A reasoning development component is composed of six levels.  *Id.*

[32] *See* DOT Code: 209.587-010 – Addresser (clerical) alternate titles: addressing clerk; envelope addresser.

[33] On October 2, 2012, Dr. Robert E. Pelc prepared a Psychiatric Review Technique and Medical Source Statement of Ms. Gonzales' Ability to do Work Related Activities (Mental) based on his review of Ms. Gonzales' records. (Tr. 313-329.)  Dr. Pelc assessed that Ms. Gonzales had moderate limitations in her ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. (Tr. 327.)  Dr. Pelc further assessed that Ms. Gonzales had marked impairments in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (Id.)  Dr. Pelc appeared at the administrative hearing and offered testimony. (Tr. 39-43.)  The ALJ stated in his determination that his RFC was supported by, *inter alia*, Dr. Pelc's opinions. (Tr. 28-29.)

[ALJ]:         Do you believe she's limited to simple and repetitive work?

[DR. PELC]:   You know, based on what [Dr. Valette[34]] is describing, yes.

[ALJ]:         It would be one or two steps, probably?

[DR. PELC]:   Yes, sir.

(Tr. 40-42.)   The DOT states that an addressing clerk requires a reasoning level of two.   A reasoning level of two is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.   Deal with problems involving a few concrete variables in or from standardized situations."   1991 WL 688702.   Thus, jobs with a reasoning level of two presupposes the ability to carry out *detailed* but uninvolved instructions. In light of Dr. Pelc's testimony, there was also an unresolved conflict between the VE's testimony and Ms. Gonzales's ability to perform a level-two reasoning job.[35]   (Tr. 42.)

The ALJ failed to ask about any possible conflict between the expert's testimony and the DOT regarding Ms. Gonzales' limitation to simple and repetitive work.   Further, in light of the record evidence that Ms. Gonzales' limitation to simple and repetitive work may be restricted to only one or two steps, the ALJ's failure to ask, resolve, and explain this conflict is not harmless error.

For the foregoing reasons, the ALJ failed to apply the correct legal standards in determining whether the VE's testimony was consistent with the DOT and, in so doing,

---

[34] On February 25, 2011, state agency medical consultant Dr. Brett Valette, Ph.D., performed a psychological exam of Ms. Gonzales.   (Tr. 310-312.)   Dr. Valette's diagnostic impression included: NOS Mood Disorder, Depression; Rule Out Dysthmia; Rule Out Borderline IQ; Rule Out Development Delays; Headaches, Psychosocial Stressors: Mild to Moderate; GAF 60-65.   (*Id.*)

[35] A reasoning level of one is defined as the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions.   Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."   1991 WL 688702.

improperly relied on the VE's testimony as substantial evidence to find Ms. Gonzales not disabled.  This is reversible error.

## V.  <u>Conclusion</u>

For the reasons stated above, Ms. Gonzales' Motion to Reverse or Remand for Rehearing With Supporting Memorandum (Doc. 16) is **GRANTED.**  This matter is remanded for further proceedings consistent with the Court's findings.

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**